UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NORMA WILLETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 06-101-B-W |
| ) | |
| CITY OF WATERVILLE, et. al., ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Norma Willette brings an action under 42 U.S.C. § 1983 against the City of Waterville; John Morris, Chief of the Waterville Police Department; and, Michael Sellar, Waterville Police Officer, claiming each Defendant violated her constitutional and civil rights by arresting and using force against her. Applying traditional summary judgment standards, the Court concludes that Officer Sellar had probable cause for the arrest and his conduct during the booking process is not objectively unreasonable under the Fourth Amendment. The Court further concludes that the City of Waterville and the Chief of the Waterville Police Department are not, in any event, liable for Officer Sellar's actions. The Court grants Defendants' motion for summary judgment.

### I.   STATEMENT OF FACTS

#### A.   Summary Judgment Practice

Consistent with the "conventional summary judgment praxis, [the Court] recount[s] the facts in the light most hospitable to the [Plaintiff's] theory of the case, consistent with record support." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).

The Court has relied upon the uncontested facts or the Plaintiff's version, if properly contested.

The Court's work has been complicated by the Plaintiff's unconventional approach to the standard summary judgment practice. The Defendants complied with the provisions of the Local Rules requiring that a motion for summary judgment "shall be supported by a separate, short, and concise statement of material facts, each set forth in a separately numbered paragraph(s), as to which the moving party contends there is no genuine issue of material fact to be tried." D. Me. Loc. R. 56(b). The Plaintiff, however, failed to properly respond in accordance with the Local Rules and failed to submit her own set of Statement of Material Facts.

The Local Rules describe the proper responses if the non-movant opposes the motion. The non-movant must "submit with its opposition a separate, short, and concise statement of material facts." D. Me. Loc. R. 56(c). This the Plaintiff did. However, the Rule goes on to require that the opposing statement "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation as required by this rule." *Id.* The Local Rule mandates that each response "shall begin with the designation 'Admitted,' 'Denied,' or 'Qualified.'" *Id.* This the Plaintiff did not do.

The Plaintiff responded to the Statement of Material Facts in one of three ways: (1) she admitted some; (2) to others, she declared she could "neither admit nor deny the allegations"; and, (3) for a third group, she objected. The Plaintiff's admissions are straightforward; the Defendants' paragraphs are deemed admitted. But the Plaintiff's other responses fail to comply with the Local Rules.

Turning first to the "without knowledge" responses, Plaintiff's responses to paragraphs 10–17, 19, 21–48, 67, 69-70, 72-74, 78-79, 81-92, 94-95, 109, 120-21, and 126-32 of Defendants' Statement of Material Facts read: "Plaintiff is without knowledge to admit or object to Paragraphs [x-y] of Defendant's Statement of Material Facts."[1] *Pl.'s Resp. to Def.'s Statement of Material Facts* (Docket # 11) (PRDSMF). Some "without knowledge" responses are directed to statements within the knowledge of the Defendants' and outside the scope of the Plaintiff's knowledge. For example, Defendants' Statement of Material Fact Number 48 states: "Officer Sellar understood that both women lived at this residence." *Def.'s Statement of Material Facts* ¶ 48 (Docket # 7) (DSMF). Here, the "without knowledge" response may be an attempt to alert the Court that the Plaintiff does not know what Officer Sellar understood. Other "without knowledge" responses, however, are inexplicable. For example, Defendants' Statement of Material Fact Number 46 states: "Ms. Willette was storming around the house screaming, mainly at her daughter, but then at Officers Sellar and Bonney." *Id.* ¶ 46. As this paragraph asks Ms. Willette to admit what she herself was doing, it is difficult to understand how she could respond that her own conduct is beyond her knowledge.

In either case, these responses fail to comply with Rule 56(c): "Each such statement shall begin with the designation 'Admitted,' 'Denied,' or 'Qualified' and, in the case of an admission, shall end with such designation." D. Me. Loc. R. 56(c). The "without knowledge" responses fail to comply with this Rule, and as such, Defendants' statements are deemed admitted, if properly supported. D. Me. Loc. R. 56(f) ("Facts contained in a

---

[1] Some responses contain a variation, for example, "Plaintiff can neither admit nor deny the allegations contained in Paragraphs 78-79 of Defendant's Statement of Fact." PRDSMF ¶ 78-79.

3

supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").[2]

The third group of responses is "objections"; instead of denying a statement, the Plaintiff has objected to it. For example, Defendants' Statement Number 98 asserts:

> 98. Ms. Willette refused to cooperate with the booking process by giving Officer Sellar any name and address information.

DSMF ¶ 98. Ms. Willette's response states:

> Objection. Plaintiff denies the allegations contained in Paragraph 98 of Defendant's Statement of Facts that Ms. Willette refused to cooperate with the booking process. Plaintiff gave her name several times and upon being asked repeatedly for her name she then refused to answer.

*See* Willette Affidavit at ¶ 16. The Court treats these objections as denials, but cannot treat them as affirmative statements of fact. Thus, in the context of Ms. Willette's response to paragraph 98, the Court interprets her response as effectively denying the allegations, but ineffectively asserting that she gave her name several times and, upon being asked repeatedly for her name, refused to answer.

Finally, although the Plaintiff denied some of the Defendants' Statement of Material Facts, she failed to file any of her own. This is her most critical failure. Local Rule 56(c) allows a party opposing a motion for summary judgment to submit an opposing set of material facts and Local Rule 56(d) allows the movant to respond to the opponent's statement of material facts. The Plaintiff submitted no separate Statement of Material Facts under this provision and, therefore, under the Local Rules, she put no new facts in controversy. In effect, she has only denied the Defendants' facts, not asserted her own.

---

[2] Before deeming the facts admitted, the Court reviewed each Defendants' Statement to make certain it is properly supported by record citations as required by the rule.

The Court has no wish to be overly punctilious in its application of the Local Rules on motions for summary judgment. *See Toomey v. Unum Life Ins. Co. of Am.*, 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004); *Ricci v. Applebee's Northeast, Inc.*, 297 F. Supp. 2d 311, 320-21 (D. Me. 2003). However, here the failure of the Plaintiff to follow the rules has disadvantaged the Defendants. The orderly progression of filings allows the parties to frame contested factual issues and eliminate the uncontested. To allow the Plaintiff to make affirmative assertions in her responses without submitting her own Statement of Material Facts would be to ignore the Local Rule and would give the Plaintiff an undue advantage of making affirmative factual assertions without giving the Defendants the opportunity to respond as the Rule contemplates. It would also require the Court to act as the Plaintiff's advocate, doing the Plaintiff's work for her, searching through her responses and affidavit to determine whether a fact has been effectively asserted and how the Defendants would likely have responded, if given the opportunity. In sum, the Court recites the facts in accordance with the conventional praxis and in accordance with the requirements of the Local Rules.

### B. Background Facts

On December 17, 2004, at approximately 10:30 a.m., in response to a report of a mother and daughter fighting, Officer Michael Sellar of the City of Waterville Police Department was dispatched to 1 Dunton Court.[3] DSMF ¶ 23. Detective William Bonney also responded, because he was familiar with the residents. DSMF ¶ 24. He had been dealing with the family for approximately two months to get the daughter back to school on a regular schedule. DSMF ¶ 25.

---

[3] In reciting the facts, the Court has cited only the Defendants' Statement when Ms. Willette responded that she did not have sufficient knowledge to respond, which the Court has taken as an admission; it has cited both the Defendants' Statement and the Plaintiff's response either when she admitted or objected to the Statement, which the Court has taken as a denial.

When the officers arrived, Ms. Willette was "completely hysterical, yelling, and screaming at her daughter who was backed up against a wall crying." DSMF ¶ 45. Ms. Willette was "storming around the house screaming, mainly at her daughter, but then at Officers Sellar and Bonney." DSMF ¶ 46. They found the apartment "littered with broken glass, a broken phone, and other items." DSMF ¶ 51; PRDSMF ¶ 51. The officers separated the two: Detective Bonney spoke with the daughter in one room while Officer Sellar spoke with Ms. Willette in the living room. DSMF ¶ 50; PRDSMF ¶ 50.

At this time, "Ms. Willette began to hyperventilate and appeared unable to speak." DSMF ¶ 56; PRDSMF ¶ 56. She got a drink of water and Officer Sellar had her sit down as Detective Bonny talked to her daughter. DSMF ¶ 57; PRDSMF ¶ 57. Ms. Willette demanded that the officers arrest her daughter. DSMF ¶ 59. She claimed that her daughter had grabbed her left breast and twisted it, and that she had been cut in the hand and foot by broken glass.[4] DSMF ¶ 60. Ms. Willette denied having any physical contact whatsoever with her daughter. DSMF ¶ 65; PRDSMF ¶ 65.

In order to speak with Ms. Willette's daughter without her mother screaming at her, Detective Bonney took the daughter outside. DSMF 66; PRDSMF ¶ 66. Once outside, Detective Bonney noticed that the daughter "had what appeared to be marks of a distinctive-shaped ring imprinted on her face and it was clear that she had been punched with a hand wearing that ring." DSMF ¶ 67. It appeared to Detective Bonney that the daughter "had been struck with a great deal of force to emblazon that ring's mark on her face as clearly as he

---

[4] Ms. Willette denied a portion of Defendants' Statement of Material Fact paragraph 60 to the extent it alleges that she held her stomach; she did not deny the portion of the Statement that alleges that she told the officer that her daughter had grabbed and twisted her breast. DSMF ¶ 60; PRDSMF ¶ 60. Consistent with its earlier ruling, the Court has considered only the factual allegation about Ms. Willette's stomach as properly denied. Ms. Willette asserted her only injuries were to her head and neck, PRDSMF ¶ 60; again, consistent with its earlier ruling, the Court has not considered this affirmative factual allegation.

observed it to be." DSMF ¶ 69. He also observed "other marks from the same ring on the left side of [the daughter's] face." DSMF ¶ 70. Detective Bonney also found what appeared to be Ms. Willette's ring entangled in the daughter's hair and the daughter had to "pull out of clump of her hair to get it free." DSMF ¶ 74. Detective Bonny took the ring for evidence and took photographs of the daughter's face. DSMF ¶ 83. The daughter told both officers that she had been the victim of a "'vicious' attack by her mother." DSMF ¶ 81. The daughter also claimed that her mother hit her several times that day and that she hit her often in the past. DSMF ¶ 85. The officers found a ring on Ms. Willette's hand that appeared to match the imprints on her daughter's face.[5] DSMF ¶ 88.

Between the two women, the officers were faced with wholly inconsistent descriptions of who did what to whom. There was, however, a consistency between the daughter's version of the events and the physical evidence, particularly the marks on the daughter's face and Ms. Willette's unusual ring or rings. There was also an inconsistency between Ms. Willette's story and the absence of any sign of physical injury on Ms. Willette. Having interviewed the daughter and evaluated the physical evidence, Officer Sellar concluded he had probable cause to arrest Ms. Willette for assault and he transported her to the Waterville Police Station for booking. DSMF ¶ 94.

---

[5] The Statement of Material Facts on the so-called "distinctive ring" are not a model of clarity. Both officers state in their affidavits that Ms. Willette's daughter had distinctive marks on both sides of her face consistent with a distinctive ring. Detective Bonney avers that the marks were made by the same ring. Detective Bonney states that he found a distinctive ring so tangled up in the daughter's hair that to remove the ring, the daughter had to pull out a clump of her hair. Detective Bonney took the ring as evidence. The officers go on to state, however, that shortly thereafter, they found a distinctive ring on Ms. Willette's right hand that matched the shape of her daughter's facial marks.
   The officers cannot be discussing one ring, since the same ring could not be tangled in the daughter's hair and then retained in evidence and simultaneously be on Ms. Willette's finger. The officers are likely discussing two distinctive rings, but their statements give the impression that the marks on the daughter's face were caused by the same distinctive ring. It is difficult to correlate the distinctive marks on the daughter's face with two distinctive rings, unless the distinctive rings were distinctive in the same way. This confusion is not fatal to the probable cause analysis. The upshot is that the affidavits demonstrate that the police concluded the Plaintiff was the aggressor and the rings and other evidence gave them probable cause to arrest her.

"Upon Officer Sellar's arrival in the booking room at the Waterville Police Station, he followed the police department's policy when dealing with arrestees and sat Ms. Willette in a chair with her right wrist handcuffed to the wall." DSMF ¶ 95. "The booking room at the Waterville Police Station is monitored by a security camera, and Ms. Willette's booking was captured on video."[6] DSMF ¶ 96. While she was handcuffed to the wall, Officer Sellar asked Ms. Willette her name and address; at one point, Officer Sellar asked her how to spell her last name and she replied by spelling out "c-r-a-z-y." DSMF ¶ 98;; DSMF ¶ 99. Ms. Willette subsequently removed herself from the chair and sat on the floor with her right arm still handcuffed to the wall. DSMF ¶ 101. Officer Sellar approached Ms. Willette and asked her several times to get up from the floor and back in the chair; Ms. Willette refused. DSMF ¶ 103; PRDSMF ¶ 103; DSMF ¶ 104. As Officer Sellar lifted Ms. Willette from the floor to the chair, Ms. Willette's wrist apparently broke.[7] Ms. Willette reacted: "Are you going to break somebody's freaking wrist just for sitting on the floor?" DSMF ¶ 108; PRDSMF ¶ 108.

This case ensued.

## II.     Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).

---

[6] The parties have filed and the Court has viewed the DVD of the incident.

[7] In her Response to the Defendants' Statements of Material Fact paragraph 107, after denying that she struggled against Officer Sellar, Ms. Willette affirmatively alleged that Officer Sellar bent her wrist back until it broke. *See* DSMF ¶ 107; PRDSMF ¶ 107. The Court has accepted her denial of the allegation that she struggled against Officer Sellar, but has not considered her affirmative contention that he squeezed her hand and broke it.

"Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both genuine and material." *Sheinkopf v. Stone*, 927 F.2d 1259, 1261 (1st Cir. 1991) (citation and internal quotation marks omitted). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). In applying this standard, the record is viewed in the light most favorable to the nonmoving party. *FDIC v. Anchor Props.*, 13 F.3d 27, 30 (1st Cir. 1994).

### III. DISCUSSION

#### A. Qualified Immunity

Ms. Willette's claims against Officer Sellar and Chief of Police Morris (in his individual capacity) must be analyzed through the lens of qualified immunity. This doctrine provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Galarza*, 484 F.3d 1, 26 (1st Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The First Circuit's three-step approach to qualified immunity claims asks:

> (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.

*Wilson v. City of Boston*, 421 F.3d 45, 52 (1st Cir. 2005) (quoting *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 141 (1st Cir. 2001)).  As directed by the Supreme Court, the Court considers this analysis sequentially for each of Ms. Willette's claims, addressing first whether Defendants' actions violated a constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 200 (2001).

### B.    The Illegal Arrest Claim Against Officer Sellar[8]

In response to Ms. Willette's claim that they violated her Fourth Amendment right to be free from unreasonable searches and seizures of her person, Defendants argue that their arrest of Ms. Willette was constitutional and, furthermore, that they are entitled to qualified immunity.  While she claimed that the arrest was illegal in her complaint, Ms. Willette did not answer Defendants' probable cause arguments in her response to the Defendants' motion.

Under the first prong of the qualified immunity analysis, a court must ask "whether the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right."  *Galarza*, 484 F.3d at 27 (quoting *Saucier*, 533 U.S. at 201) (internal quotation marks omitted).  Here, Ms. Willette alleges a violation of her rights under the Fourth Amendment:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  As the First Circuit explained in *Wilson*, the "ultimate question for determining whether an arrest violates the Fourth Amendment is . . . whether there was

---

[8] The Court considers both claims against Officer Sellar in his individual capacity.  There are no facts in the record that would hold Chief Morris responsible for an illegal arrest or excessive force in his individual capacity.  Chief Morris' liability in his professional capacity is considered in Part II (E), below.

10

probable cause to believe that the arrestee had committed or was committing a crime."[9]  421 F.3d at 55.

Despite Ms. Willette's assertion that Defendants violated her Fourth Amendment rights, the facts – even in the light most favorable to Ms. Willette – do not support her claim. Probable cause exists "when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and the putative arrestee is likely to be one of the perpetrators." *Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004) (quoting *Acosta v. Ames Dep't Stores*, 386 F.3d 5, 9 (1st Cir. 2004)). Applying this standard, the conclusion is inescapable that the officers acted reasonably in arresting Ms. Willette for assaulting her daughter.

Officer Sellar was dispatched to the house because of a report of a mother and daughter fighting and Detective Bonney also responded because of his familiarity with the family, including their history of violent behavior and Ms. Willette's own emotional challenges.[10]  When they arrived at the residence, the officers found Ms. Willette hysterical, her daughter backed up against a wall crying, and the apartment littered with broken glass, a broken phone, and other items. Ms. Willette was agitated and shouting at her daughter, and later, at the officers. Ms. Willette requested that her daughter be arrested.

After further investigation and interviews, Detective Bonney determined there was physical evidence that the daughter had been punched hard on both sides of her face with a

---

[9] The officers had the authority to make a warrantless arrest under Maine law. 17-A M.R.S.A. § 15 (1)(A)(5-A) ("[A] law enforcement officer may arrest without a warrant: Any person who the officer has probable cause to believe has committed or is committing: assault . . . if the officer reasonably believes that the person and the victim are family or household members."). It is uncontroverted that Ms. Willette and her daughter were family members living in the same household.

[10] Ms. Willette's daughter herself was arrested on assault charges on December 9, 2004. DSMF ¶¶ 30, 36. As a result of his interactions with the mother and daughter, Detective Bonney referred them to the Kennebec Valley Mental Health's Multi-Systemic Therapy program to provide resources regarding their relationship and history of violence. *Id.* ¶ 43. The first evaluation occurred on December 16, 2004, the day before this incident. *Id.* ¶ 44.

fist wearing a distinctively-shaped ring. He also found a distinctive ring entangled in the daughter's hair or on Ms. Willette's hand, or both, and the shape of the ring matched the marks on the daughter's face. The daughter told both officers that she had been the victim of a "vicious" attack by her mother. The daughter also claimed that she was hit several times a day by Ms. Willette and that her mother had hit her often in the past.

Given the history of violence in the family, the physical evidence, and the daughter's statements, Officer Sellar had probable cause to arrest Ms. Willette without an arrest warrant.[11]

### C. The Excessive Force Claim Against Officer Sellar

Under the Fourth Amendment, a law enforcement officer may use "such force as is reasonably necessary to effect an arrest."[12] *United States v. McQueeney*, 674 F.2d 109, 113 (1st Cir. 1982). In a Fourth Amendment excessive force case, the "threshold constitutional question is analyzed under the . . . objective reasonableness standard." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 7 (1st Cir. 2005). The Supreme Court has adopted a balancing test for evaluating "whether a particular exercise of force is constitutional: 'Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at

---

[11] Even if the Court were incorrect and probable cause did not exist to arrest, Defendants would be protected under the third prong of the qualified immunity analysis, since probable cause was not clearly lacking when Officer Sellar arrested her. *Cox*, 391 F.3d at 31 ("[I]n the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach.").

[12] Ms. Willette limits her claim and arguments solely to the Fourth Amendment. The Defendants also make no mention of any other constitutional basis for Ms. Willette's claim. The Court thus considers her claim under the Fourth Amendment test. Further, although the standards for evaluating constitutional claims once a person is in police custody may vary, the Fourth Amendment standard asserted by Ms. Willette is commonly the most favorable to the Plaintiff. *See Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005) (discussing whether the case should be analyzed under the Fourteenth Amendment instead of the Fourth Amendment); *Dickinson v. Purinton*, No. 06-209-P-S, 2007 U.S. Dist. LEXIS 60421, at *6-7 (D. Me. Aug. 3, 2007), *aff'd*, 2007 U.S. Dist. LEXIS 64165 (D. Me. Aug. 28, 2007) (discussing a comparison between the standards set out by the Fourth Amendment and the Eighth Amendment).

stake.'" *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 148 (1st Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  In *Saucier*, the Supreme Court stated:

> *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requiring careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.

533 U.S. at 205 (quoting *Graham*, 490 U.S. at 396).  Nevertheless, the use of excessive force in carrying out an arrest may violate the Fourth Amendment's prohibition against unreasonable seizures of the person.  *See Graham*, 490 U.S. at 395; *Kaluzynski v. Armstrong*, No. 00-267-B-S, 2001 U.S. Dist. LEXIS 11040, *11 (D. Me. May 16, 2001).

Here, the Court cannot conclude that Officer Sellar's actions constitute excessive force.  First, the Plaintiff failed through her idiosyncratic approach to summary judgment practice to place before the Court her main allegation:  that while she was in custody with her arm handcuffed to the wall, Officer Sellar approached her and forcefully bent her wrist back to the point where he broke it.  The Plaintiff failed to place this contention in her statement of material facts, because she filed none.

Defendants did file a DVD of the incident, which the Court has carefully reviewed, since it is an exhibit to the statement of material facts.[13]  DSMF, Ex. 1 to Sellar Aff.  The DVD reflects conduct far removed from the type of behavior approaching a Fourth Amendment violation.  The DVD begins with Ms. Willette standing with her hands handcuffed behind her back and Officer Sellar taking the handcuffs off, placing her in a

---

[13] Ms. Willette has admitted that "the events that occurred during Ms. Willette's booking were captured on video" and that the submitted DVD was a "true and accurate copy".  DSMF ¶ 96; PRDSMF ¶ 96.

13

chair, and handcuffing her right wrist to the wall.  It was Officer Sellar's task to book Ms. Willette for assaulting her daughter; he stood by a keyboard on the other side of a desk from Ms. Willette, asking her questions to complete the booking form.  She was uncooperative.  After answering his request for the spelling of her name by saying "c-r-a-z-y," Ms. Willette proceeded to slide off the chair and sit on the floor.  Officer Sellar asked Ms. Willette to get up off the floor so that he could continue the booking process, and when she did not comply he walked over to her.  Officer Sellar then asked her several times to get up off the floor and into the chair.  She continued to sit on the floor.  He bent down and picked her up to place her in the chair.  Although the video is not especially clear and Officer Sellar's back blocks some of the view, it appears that he struggled as he attempted to reseat her.  The encounter was extremely brief – a few seconds – but it was apparently during this encounter that Ms. Willette's wrist broke.  The DVD does not reveal either how the wrist was broken or, for that matter, how it could have been broken.  Neither the Defendants' Statement of Material Facts nor the DVD can reasonably be construed to allow the inference that Officer Sellar's behavior was objectively unreasonable in placing her in the chair.

It is true that Officer Sellar could have left Ms. Willette seated on the floor in the booking area.  But his actions were made in the face of Ms. Willette's prior conduct and were consistent with the manifest need to maintain order, discipline, and compliance within the booking area.  His attempt to reseat Ms. Willette, if ill-advised in hindsight, was not objectively unreasonable.  Further, under qualified immunity, Officer Sellar would be protected by the third prong of the analysis.  Given the facts on summary judgment, no reasonable officer, similarly situated to Officer Sellar, would understand his actions to violate an established right.

14

### D. Illegal Arrest and Excessive Force Claims Against the City of Waterville and Chief Morris

Summary judgment is also appropriate for both the City of Waterville and for Chief Morris.[14] First, regarding the City, relying merely on a *respondeat superior* basis is not enough. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 691-93 (1978). "[A] plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal 'policy' or a 'custom' that caused the plaintiff's injury." *Silva v. Worden*, 130 F.3d 26, 30-1 (1st Cir. 1997). The facts on the record, viewed in the light most favorable to Ms. Willette, demonstrate that the City of Waterville had appropriate booking and arrest policies in place. *St. Hilaire v. City of Laconia*, 71 F.3d 20, 29 (1st Cir. 1995).

Second, concerning Officer Morris in his professional capacity, a supervising officer may be liable for another officer's use of force if there is evidence of "participation, concerted action, or at least culpable knowledge" of the use of force. *Calvi v. Knox County*, 470 F.3d 422, 429 (1st Cir. 2006). The evidence shows that Chief Morris' only contact with Ms. Willette was as she was released from custody, after the incident in the booking room occurred. Further, Chief Morris had no previous notice of inappropriate use of force on the part of Officer Sellar. Based on the record before the Court, Chief Morris cannot be liable for Officer Sellar's actions.

### IV. CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment (Docket # 6).

---

[14] This section analyzes the City's and the Chief's liability as if Officer Sellar were held legally responsible under § 1983 for a violation of Ms. Willette's constitutional rights. If Officer Sellar did not violate Ms. Willette's constitutional rights, her claims against the City and the Chief necessarily fail. This analysis only provides an independent rationale for her claims to fail against the City and the Chief, even if her claim against Officer Sellar was successful.

SO ORDERED.

                 <u>/s/ John A. Woodcock, Jr.</u>
                 JOHN A. WOODCOCK, JR.
                 UNITED STATES DISTRICT JUDGE

Dated this 15th day of October, 2007